IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHOICE ESCROW AND LAND TITLE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 10-03531-CV-S-JTM |
| | ) | |
| **BANCORPSOUTH BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

In 2010, Choice Escrow and Land Title, LLC ("Choice"), the plaintiff herein, maintained a trust account with BancorpSouth Bank ("BSB"), the defendant herein. On March 17, 2010, BSB received an internet-based request to make a wire transfer of $440,000.00 out of Choice's trust account through "In-View," BSB's internet wire transfer system. The wire transfer request was made using Choice's "User ID" and "Password." Although Choice's trust account did not have a balance sufficient to cover the wire transfer request, BSB nonetheless transferred $440,000 to an intermediary bank [Bank of New York] who then transferred the funds to an institution in the Republic of Cypress, as a beneficiary for an entity identified as "Brolaw Services, Ltd."

In the present action, Choice has sued BSB under several different theories of liability. In general, Choice alleges that it "has never heard of, done business with, or held money in escrow for Brolaw." Moreover, Choice asserts that it did not initiate, approve, authorize, or ratify the March 17, 2009 wire transfer. Instead, Choice contends that the wire transfer was fraudulently initiated by an unknown third party. Choice has sued BSB alleging that the bank violated the "Funds Transfers" provisions of the Uniform Commercial Code ("UCC") as adopted

by Missouri, MO. REV. STAT. §§ 400.4A-101, *et seq.* In addition, Choice asserts that BSB is liable for damages for negligence and/or breach of fiduciary duty.[1] Pending before the Court is BSB's motion to dismiss the claims raised by Choice for failing to state a claim upon which relief may be granted. For the reasons stated herein, the motion is granted in part and denied in part.

In Count I of its FIRST AMENDED PETITION, Choice asserts a claim that BSB violated the Funds Transfers provisions of the UCC. That law generally places the risk of loss on a customer (as opposed to a bank) in the event of a dispute regarding the propriety of a funds transfer.

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

MO. REV. STAT. § 400.4A-202(b). Inherent in this rule, however, are requirements that the security procedure utilized by a bank must be a "commercially reasonable method" and the bank must prove that it accepted a transfer request in good faith and in compliance with the security procedures and prior agreements with the customer. To the extent that either or both of these requirements cannot be met, then the risk of loss falls on the bank. BSB describes this as the "verification theory" for shifting the loss to the bank.

---

[1] Initially, Choice also sued BSB for an alleged violation of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-09. By agreement of the parties, however, that claim was previously dismissed by the Court.

The Funds Transfers provisions of the UCC also contain a second avenue for shifting the risk of loss to a bank, described by BSB as the "agency theory." In general, under Missouri law:

> A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.

MO. REV. STAT. § 400.4A-202(b). When the customer contests that an order was made by a person authorized as an agent (as alleged by Choice herein):

> The receiving bank [bears the risk of loss] if the customer proves that the order was not caused, directly or indirectly, by a person (i) entrusted at any time with duties to act for the customer with respect to payment orders or the security procedure, or (ii) who obtained access to transmitting facilities of the customer or who obtained, from a source controlled by the customer and without authority of the receiving bank, information facilitating breach of the security procedure, regardless of how the information was obtained or whether the customer was at fault. Information includes any access device, computer software, or the like.

MO. REV. STAT. § 400.4A-203(a)(2).

BSB moves to dismiss Count I of the FIRST AMENDED PETITION arguing that it "is inconsistent and unclear as to what precise theory [Choice] seeks to recover under – the agency theory or the verification theory." BSB cites no cases to the Court that would require a plaintiff alleging a violation of a single statutory enactment (in this case the Funds Transfers provisions of the UCC) that provides different manners of establishing a violation to plead in separate counts the different manners. The Court will not require such a pleading herein.[2]

---

[2] In this case, the Funds Transfers provisions of the UCC make it clear that any court considering application of the "agency theory" [§ 400.4A-203(a)] actually must first consider whether the "verification theory" [§ 400.4A-202(a)] is at issue. Specifically section 400.4A-203(a) is applied only when "an accepted payment order is not, under section 400.4A-202(a), an authorized order of a customer identified as sender, but is effective as an order of the customer pursuant to section 400.4A-202(b)." MO. REV. STAT. § 400.4A-203(a). The two

3

In addition, BSB argues that Choice did not properly plead the elements necessary to establish either theory. The Court will not undertake a detailed recitation of the allegations contained the FIRST AMENDED PETITION except to say that the factual allegations generally track the language in the UCC, and, <u>at this mere pleading stage in the litigation</u>, dismissal is not warranted.

Finally, BSB argues that Count I of the FIRST AMENDED PETITION must be dismissed because of the express provisions of the written agreement regarding funds transfers between Choice and BSB which were attached to the FIRST AMENDED PETITION and which BSB argues place the risk of loss on Choice – regardless of the provisions of the UCC. BSB's legal argument appears to be an affirmative defense that is more appropriately resolved by summary judgment.

In Count III of the FIRST AMENDED PETITION, Choice alleges that BSB is liable for "negligence." However, within Count III, Choice repeatedly argues that BSB "was negligent, generally and/or as a fiduciary." Apparently, Choice is seeking to state a claim for negligence as well as a claim for breach of a fiduciary duty. Under Missouri law, these are two different theories of liability. Setting aside the question of the wisdom and propriety of pleading the theories interchangeably in a single count, Choice has failed to plead the existence of a fiduciary relationship between Choice and BSB – a necessary element to the cause of action.

---

"theories" are too intrinsically linked to find fault with raising both in a single count. *Compare Federal Deposit Insurance Corporation v. Miller*, 781 F.Supp. 1271, 1278 n.5 (N.D. Ill. 1991) ("[The defendant] argues that the FDIC has not complied with [the Federal Rules of Civil Procedure] by combining state and federal claims in a single count[; this] argument is rejected, as plaintiffs may plead counts which rely on different theories of recovery, if the theories are based on the same facts.").

4

In that regard, the Court has considered whether a fiduciary relationship may be inferred from the other factual pleadings in the FIRST AMENDED PETITION which certainly establish a business relationship between Choice and BSB and, more specifically, a bank-customer relationship. However, in Missouri, a mere business relationship does not give rise to a fiduciary relationship. *See*, *e.g.*, *Lucas v. Enkvetchakul*, 812 S.W.2d 256, 261 (Mo. App. [S.D.] 1991). Moreover, absent specific allegations establishing fiduciary responsibilities, the relationship between a bank and its customers does not automatically connote a fiduciary relationship. *Compare Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 334 (Mo. App. [S.D.] 1991). Thus, to the extent that Count III of the FIRST AMENDED PETITION purports to assert a claim for breach of fiduciary duty, it is dismissed for failing to state a claim.

Furthermore, BSB argues that even if Count III of the FIRST AMENDED PETITION properly states claim for both negligence and breach of fiduciary duty, any such claims are effectively preempted by the Funds Transfers provisions of the UCC. In *Zengen, Inc. v. Comerica Bank*, 41 Cal.4th 239, 158 P.3d 800 (Cal. 2007), the California Supreme Court found that the California version of the Funds Transfers provisions of the UCC displaced[3] any and all common law claims that: (1) "create rights, duties, or liabilities inconsistent with" the UCC, and (2) "where the

---

[3] Like California, Missouri's adoption of the UCC includes a provision that:

> <u>Unless displaced by the particular provisions of this chapter</u>, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

MO. REV. STAT. § 400.1-103 (*emphasis added*).

circumstances giving rise to the common law claims are specifically covered by the provisions of" the UCC. *Id*. at 253, 158 P.3d at 808. The *Zengen* rule is in conformity with decisions from other courts. *See*, *e.g.*, *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 103 (2d Cir. 1998); *Community Bank, FSB v. Stevens Financial Corp.*, 966 F.Supp. 775, 788 (N.D. Ind. 1997); *Impulse Trading v. Norwest Bank Minn., N.A.*, 907 F.Supp. 1284, 1287-88 (D. Minn. 1995); *Fitts v. Amsouth Bank,* 917 So.2d 818, 824 (Ala. 2005); *Corfan Banco v. Ocean Bank*, 715 So.2d 967, 971 (Fla. Dist. Ct. App.1998); *Aleo Intern., Ltd. v. Citibank, N.A.*, 160 Misc.2d 950, 612 N.Y.S.2d 540 (N.Y. Sup. Ct.1994); *Moody Nat. Bank v. Texas City Development*, 46 S.W.3d 373, 377-79 (Tex. Ct. App. 2001). Although it does not appear that the Missouri Supreme Court has decided this issue, the Court concludes that Missouri would adopt a similar rule for the well-formulated reasons set out in the above-cited cases.

Reviewing the factual claims asserted in Count III of the FIRST AMENDED PETITION, the Court finds that the negligence claims therein are displaced inasmuch as those claims [namely the duty to warn about risks of funds transfers, the adequacy of the safeguards provided by BSB, and BSB's efforts (or lack thereof) to retrieve the money transferred from Choice's trust account] involve circumstances specifically covered by the provisions of the UCC. The Court does note that in Count III of the FIRST AMENDED PETITION, Choice asserts one allegation that BSB was negligent in:

> failing to provide Choice a restriction or block of foreign/ international internet-based funds transfers . . . after Choice specifically requested that [BSB] provide same.

Allegedly, Choice made a specific request and a BSB employee specifically stated that BSB was unwilling and or unable to provide such a restriction or block.

6

This particular claim seems somewhat more removed from the provisions of the Funds Transfers provisions of the UCC than Choice's other Count III allegations.  However, the Court nonetheless finds displacement for two reasons.  First, the only damages that flow from this purported negligence are the same damages available under the UCC (*i.e.*, the damages flowing from the transfer of funds on March 17, 2010).  Secondly, the alleged refusal of BSB to place a restriction or block on foreign transfers arguably goes to the adequacy and reasonableness of its security safeguards as well as its good faith in honoring the March 17, 2010 funds transfer request.  Under the circumstances of this case, the Court concludes that this claim too involves circumstances specifically covered by the provisions of the UCC.

For the foregoing reasons, it is

**ORDERED** that the *Defendant's Motion To Dismiss*, filed January 10, 2011 [Doc. 2] is **GRANTED IN PART and DENIED IN PART**.  Accordingly, Count III of the FIRST AMENDED PETITION is **DISMISSED**.

    */s/ John T. Maughmer*
**JOHN T. MAUGHMER**
**U. S. MAGISTRATE JUDGE**