IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

**Choice Escrow and Land Title, LLC,** )
)
                   **Plaintiff,** )
)
**v.** )     Case No. 10-03531-CV-S-JTM
)
**BancorpSouth Bank,** )
)
                  **Defendant.** )

# ORDER

In 2010, Choice Escrow and Land Title, LLC ("Choice"), the plaintiff herein, maintained a trust account with BancorpSouth Bank ("BSB"), the defendant herein. On March 17, 2010, BSB received an internet-based request to make a wire transfer of $440,000.00 out of Choice's trust account through BSB's internet wire transfer system. The wire transfer request was made using Choice's assigned "User ID" and "Password." BSB thereafter transferred $440,000 to an intermediary bank [Bank of New York] which then transferred the funds to an institution in the Republic of Cypress, as a beneficiary for an entity identified only as "Brolaw Services, Ltd."

Choice has now sued BSB, arguing that it "has never heard of, done business with, or held money in escrow for Brolaw," that it did not initiate, approve, authorize, or ratify the March 17, 2009 wire transfer, and that the wire transfer was fraudulently initiated by an unknown third party. Choice's claims arise under the "Funds Transfers Act" provisions of the Uniform Commercial Code ("UCC") as adopted by Missouri, MO. REV. STAT. §§ 400.4A-101, *et seq.*

Presently pending before the Court is PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS [Doc. 80], wherein Choice asserts that four counterclaims asserted by BSB are displaced by the Funds Transfers Act. The four counterclaims all revolve around indemnity agreements signed by Choice and generally agreeing to indemnify BSB for any losses, costs, liabilities, or expenses.

As enacted in Missouri and other jurisdictions, the Funds Transfers Act was not intended to preempt or displace all causes of action between a bank and its customers engaging in money transfers.

> <u>Unless displaced by the particular provisions of this chapter</u>, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

MO. REV. STAT. § 400.1-103 (*emphasis added*). With regard to the highlighted text, however, the Funds Transfers Act "provides that common law causes of action based on allegedly unauthorized funds transfers are preempted in two specific areas: (1) where the common law claims would create rights, duties, or liabilities inconsistent with [the Act]; and (2) where the circumstances giving rise to the common law claims are specifically covered by" the Act. *Zengen, Inc. v. Comerica Bank*, 41 Cal.4th 239, 240, 158 P.3d 800, 808 (Cal. 2007).

The issue here, then, is whether a written indemnity agreement between a bank and its customer whereby the customer agrees to indemnify the bank for any losses, costs, liabilities, or expenses is inconsistent with the Funds Transfers Act or whether those matters are specifically covered by provisions of the Act. The Court having read the briefing of the parties finds this to be a very close call.

On one hand, it seems obvious that the drafters of the UCC wanted banking sector parties to be protected from common law negligence claims and to encourage uniformity and consistency. On the other hand, it seems unlikely that the drafters of the UCC wanted to <u>discourage</u> business entities from freely exercising their rights to contract the terms of their relationships. Indeed, as noted by BSB, the Fund Transfers Act does seem to contemplate situations where a bank and its customers reach written agreements concerning their relationship without running afoul of the Act. However, the examples cited by BSB tend to involve discrete, narrow areas of the bank-client relationship. The indemnity agreements at issue here, however, could effectively require Choice to pay back to BSB those amounts that BSB might owe to Choice under the Funds Transfers Act. Such a result seems at odds with the purpose of the Act:

> The uniformity and certainty sought by the statute for these transactions could not possibly exist if parties could opt to sue by way of pre-Code remedies where the statute has specifically defined the duties, rights and liabilities of the parties.

*Corfan Banco v. Ocean Bank,* 715 So.2d 967, 971 n.5 (Fla. App. [3d Dist.] 1998). More pointedly, the Official Comments to the Funds Transfers Act provides:

> In the drafting of [the Fund Transfers Act], a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. <u>A deliberate decision was also made to use precise and detailed rules to assign responsibility</u>, define behavioral norms, <u>allocate risks and establish limits on liability</u>, rather than to rely on broadly stated, flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers <u>need to be able to predict risk with certainty, to insure against risk</u>, to adjust operational and security procedures, and to price funds transfer services appropriately.

MO. REV. STAT. § 400.4A-102 [UCC Comment 1994) (*emphasis added*).

Although a close call, the Court concludes that the Funds Transfer Act does displace the types of indemnity agreement being relied upon by BSB in support of its counterclaims. As such, the Court dismisses such claims.

In addition, presently pending before the Court is BSB's DEFENDANT'S MOTION REGARDING SUFFICIENCY OF PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUEST FOR ADMISSIONS [Doc. 78]. In asserting this motion, BSB failed to adhere to the Court's Local Rule 37.1. Nonetheless, the Court will address the motion.

BSB challenges Choice's responses to six requests for admissions, arguing that Choice "improperly qualified" its responses. The Federal Rules of Civil Procedure provide that in responding to requests for admissions:

> A denial shall fairly meet the substance of the requested admission, and <u>when good faith requires that a party qualify an answer</u> or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

FED. R. CIV. P. 36(a) (*emphasis added*). Having reviewed Choice's responses, as well as its explanation for each response, the Court does not find that responses were "improperly qualified."

For the foregoing reasons, it is

**ORDERED** that PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, filed May 7, 2012, [Doc. 80] is **GRANTED** and DEFENDANT'S MOTION REGARDING SUFFICIENCY OF PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUEST FOR ADMISSIONS, filed May 4, 2012 [Doc. 78] is **DENIED**.

                                                  */s/ John T. Maughmer*
                                               **John T. Maughmer**
                                       **United States Magistrate Judge**